[Cite as *State v. Parker*, 2024-Ohio-500.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF MEDINA | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No. 2023CA0047-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| STEVEN PARKER | MEDINA MUNICIPAL COURT<br>COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 22TRC04072 |

## DECISION AND JOURNAL ENTRY

Dated: February 12, 2024

SUTTON, Judge.

{¶1} Defendant-Appellant Steven Parker appeals the judgment of the Medina Municipal Court. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} This appeal arises from a motor vehicle accident at Pearl and Hamilton Road in Medina Township. Mr. Parker was charged with driving while under the influence of alcohol with a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath, in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d), first degree misdemeanors, and failing to maintain an assured clear distance, in violation of R.C. 4511.21(A), a minor misdemeanor.

{¶3} Mr. Parker pleaded not guilty to the charges. After receiving a 20-day extension from the trial court to file his motion to suppress, Mr. Parker filed a motion to suppress beyond the

extended time allowed by the trial court. The trial court denied Mr. Parker's motion to suppress as untimely and also denied Mr. Parker's motion for reconsideration.

{¶4} The matter proceeded to jury trial on the charges relating to driving under the influence of alcohol ("OVI charges"). However, the charge relating to failing to maintain an assured clear distance was determined by the trial court. The jury returned a guilty verdict on the OVI charges, and the trial court found Mr. Parker guilty of failing to maintain an assured clear distance. The trial court sentenced Mr. Parker and granted his motion to stay the sentence pending appeal.

{¶5} Mr. Parker appealed raising two assignments of error for our review.[1]

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN DENYING [MR. PARKER'S] MOTION TO SUPPRESS AS UNTIMELY AND MOTION TO RECONSIDER.**

{¶6} In his first assignment of error, Mr. Parker argues the trial court erred in denying his motion to suppress as untimely and in denying his motion for reconsideration on the same issue. We disagree.

{¶7} Pursuant to Crim.R. 12(D):

All pretrial motions except as provided in Crim. R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.

Additionally, pursuant to Crim.R. 12(H):

Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court pursuant to division (D) of

---

[1] Although Mr. Parker's brief lists three assignments of error at the outset, he only discusses two assignments of error in the body of his brief. Accordingly, we limit our review to those two assignments of error.

this rule, or prior to any extension of time made by the court, shall constitute waiver of the defenses or objections, but the court *for good cause shown may grant relief from the waiver.*

(Emphasis added.) "The decision as to whether to permit the untimely filing of a motion to suppress, under Crim.R. 12, will not be reversed on appeal absent a showing of an abuse of discretion." *State v. Hamilton*, 9th Dist. Lorain No. 17CA011238, 2019-Ohio-1829, ¶ 30, quoting *State v. Lough*, 9th Dist. Summit No. 21547, 2004-Ohio-596, ¶ 5. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8} Here, the record reveals Mr. Parker entered his plea of not guilty to the charges, through a filing by counsel, on August 30, 2022, making the 35-day filing deadline October 4, 2022. On October 4, 2022, Mr. Parker filed a motion for leave to plead requesting the trial court grant him an extension to file his motion to suppress "after discovery has been reviewed." The trial court, on October 5, 2022, granted Mr. Parker's motion for leave stating, "[Mr. Parker's] 10/4/22 motion to extend the time to file all [Crim.R. 12] motions, is, for cause shown, granted. All [Crim.R. 12] motions must be filed and served on or before 10/24/22." In spite of the trial court's order, the docket shows Mr. Parker filed his motion to suppress on November 9, 2022, 17-days after the extended deadline. The trial court denied Mr. Parker's motion to suppress as untimely, stating:

> [Mr. Parker] was plainly aware of the means for extending the deadline and did so once. The [m]otion to [s]uppress was, nevertheless, filed beyond the extended deadline. No showing of "good cause" for [its] late filing accompanied the [m]otion. The [c]ourt is within its discretion to deny the [m]otion on this basis.

Mr. Parker then filed a motion for reconsideration indicating he never received service of the trial court's October 5, 2022 order extending the time to file his motion to suppress to October 24, 2022, and did not check the docket. Further, Mr. Parker admitted to receiving the State's additional discovery on October 11, 2022, 30-days prior to filing the November 9, 2022 motion to suppress.

{¶9} In denying Mr. Parker's motion for reconsideration, the trial court explained:

Except for his unfounded assumptions, [Mr. Parker] does not explain why he waited nearly 30 days from his 10/11/22 receipt of the State's discovery to file his 11/9/22 [m]otion to [s]uppress. He does not explain why the nearly two weeks remaining between 10/11/22 and the 10/24/22 filing deadline set by the [c]ourt's [10/5/22] [j]udgment [e]ntry were insufficient to complete and file his motion to suppress. Neither does [Mr. Parker] explain or identify a legal basis supporting his assertion that he had been authorized to file his motion to suppress within 30 days from the date of his receipt of that discovery. That [Mr. Parker] never reviewed the [c]ourt's docket during the 36-day period following the filing of his 10/4/22 motion to extend his motion-filing deadline, to ascertain the ruling on his motion, is inexplicable.

{¶10} Based upon our review of the record, we cannot say the trial court abused its discretion in denying Mr. Parker's motion to suppress as untimely and in denying Mr. Parker's motion for reconsideration. The trial court's October 5, 2022 judgment entry indicates it was served on all parties or their attorneys "by sending a copy to them by regular mail on [October 5, 2022.]" The trial court's docket also indicates the October 5, 2022 judgment entry was mailed to both parties. Further, Mr. Parker, by his own admission, received the additional discovery from the State on October 11, 2022, and waited until November 9, 2022 to file his motion to suppress. Indeed, Mr. Parker still had 13-days to review the discovery and file a timely motion to suppress by October 24, 2022. Thus, the trial court did not err in denying Mr. Parker's motion to suppress as untimely and in denying Mr. Parker's motion for reconsideration.

{¶11} Accordingly, Mr. Parker's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**[MR. PARKER'S] CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶12}  In his second assignment of error, Mr. Parker argues his conviction is against the manifest weight of the evidence.  Specifically, Mr. Parker argues: (1) he did not display certain signs of impairment; (2) the officer incorrectly administered the Horizontal Gaze Nystagmus test; (3) the officer gave incorrect instructions on the Walk and Turn test; and (4) one of the Intoxilyzer 8000 breath tests performed was not valid.

{¶13}  As this Court has previously stated:

> [i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶14}  Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.*  "[T]he jury is best able to view witnesses and

observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

{¶15} Here, Officer Matthew O'Donnell of the Medina Township Police testified Mr. Parker exited the parking lot of Bunker Hill Golf Club and drove approximately 100 to 150 feet when he rear ended another vehicle stopped at the traffic light. After determining there were no injuries, Officer O'Donnell had the parties move the vehicles off the roadway into a parking lot. At that time, Officer O'Donnell approached Mr. Parker's vehicle, wherein Mr. Parker was the sole occupant, and smelled the odor of alcohol. Officer O'Donnell also noticed Mr. Parker's eyes were bloodshot and glassy. Officer O'Donnell asked Mr. Parker if he had consumed any alcohol and Mr. Parker responded, "he had roughly six beers over six hours." Officer O'Donnell then had Mr. Parker perform standard field sobriety tests "to make sure Mr. Parker was okay to pursue on from there." When Mr. Parker stepped out of the vehicle, Officer O'Donnell testified he detected "almost an overwhelming smell of alcoholic beverage."[2] During his testimony, Officer O'Donnell acknowledged Mr. Parker's speech was not slurred and Mr. Parker had no difficulty producing his driver's license or proof of insurance.

{¶16} Officer O'Donnell also testified regarding his process for conducting standardized field sobriety tests, including the Horizontal Gaze Nystagmus test, the Walk and Turn test, and the One Leg Stand test. During Officer O'Donnell's testimony, the jury watched body camera video footage of this testing. Further, Officer O'Donnell explained, while he gave Mr. Parker an incorrect instruction on the Walk and Turn test, it did not affect how the test was scored. Based

---

[2] During cross-examination, Officer O'Donnell admitted his police report did not include this exact wording, although it indicated he observed an odor of alcohol.

upon the accident, Mr. Parker's admission to consuming alcoholic beverages, the overwhelming odor of alcoholic beverage emanating from Mr. Parker's person, Mr. Parker's glassy and bloodshot eyes, and Mr. Parker's poor performance on the standardized field sobriety tests, Officer O'Donnell arrested Mr. Parker for driving while under the influence of alcohol.

{¶17} Officer O'Donnell further testified, at the Highway Patrol Station, he offered Mr. Parker the opportunity to take a breathalyzer test, and Mr. Parker agreed to the testing. At that time, Trooper Ashley C. Bogard, a certified operator of the Intoxilyzer 8000, administered the test to Mr. Parker. The jury heard testimony that, due to radio frequency interference, the results of the first test, a .124, were invalidated. Mr. Parker then re-tested at a .111 and a .119, and the test result registering .111, which is over the legal limit of .08, was introduced as evidence at trial. Therefore, the invalid test had no bearing upon Mr. Parker's conviction.

{¶18} Based upon this record, this is not an exceptional case that warrants reversal. The jury, as fact-finder, was tasked with determining the credibility of the witness' testimony and evidence in reaching its verdict. As such, the jury did not clearly lose its way and create such a manifest miscarriage of justice that Mr. Parker's conviction must be reversed and a new trial ordered.

{¶19} Accordingly, Mr. Parker's second assignment of error is overruled.

III.

{¶20} For the foregoing reasons, Mr. Parker's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT


STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR


APPEARANCES:

CATHERINE MEEHAN, Attorney at Law, for Appellant.

ROBERT CAMPBELL, Prosecuting Attorney, for Appellee.